**In re STOCKBRIDGE PROPERTIES I, LTD., an Alabama limited partnership, Debtor.**

**Bankruptcy No. A90–18951–SWC.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 3, 1992.

Annette K. McBrayer, Atlanta, Ga., for debtor.

## MEMORANDUM OF OPINION

STACEY W. COTTON, Bankruptcy Judge.

Before the court is the motion of debtor, Stockbridge Properties I, LTD., an Alabama limited partnership, to value the secured claim of respondent, First Union National Bank ("First Union"). This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(B).

The court's findings of fact and conclusions of law are set forth hereinafter.

## FACTS

Debtor is the owner of a shopping center known as Freeway Junction South Shopping Center ("shopping center"). The shopping center is occupied by two anchor tenants and several smaller retailers. Six undeveloped lots ("outparcels") are located behind the shopping center.

On or about February 16, 1989 debtor obtained a loan of $736,000 from First Union and granted First Union a security deed in the outparcels. The outparcels have been on the market for approximately three years. The parties stipulated that as of October 21, 1991, First Union held a claim for principal and interest of $827,664.83. However, the parties disagree over the value of the outparcels. On August 27, 1991 debtor filed its motion to value First Union's secured claim. Debtor seeks valuation of the outparcels for the purposes of confirmation of a plan of reorganization in which it proposes to distribute or turn over the outparcels to First Union for appropriate reduction and satisfaction of its debt to the extent of such value. This is the first step toward confirmation of debtor's plan.

Debtor's evidence as to value consists of the testimony and appraisal of its expert, William F. Cantrell, an appraiser with Southern Consulting Group. Cantrell based his appraisal on the fair market value [1] of the outparcels. He determined that the highest and best use for two of the outparcels was lower profile retail/commercial development and for the other four was light industrial or business park development. Report of an Appraisal of the Current Market Value Freeway Junction South Outparcels ("Cantrell Appraisal"), pp. 44–50. He concluded that the comparative sales approach was the best method to appraise the outparcels. This approach values real property by comparing it to properties with similar attributes that have

---

1. Fair market value is defined as "... The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably and assuming the price is not affected by undue stimulus." 12 C.F.R. § 1608.2(f) (1991).

been sold recently. *Id.* p. 51. On this basis Cantrell concluded that the outparcels had an aggregate fair market value of $980,000. *Id.* pp. 60–61.

Cantrell estimated that it would take approximately one to two years to sell all the outparcels to end users. Hearing Transcript ("Tr."), p. 21. Therefore, he discounted the fair market value of the outparcels to present value by deducting the costs associated with maintaining and marketing the outparcels for that period. He calculated such costs, including interest, taxes and commissions, to be $151,329. Tr., pp. 22–24. Adjusting for those costs he concluded that the fair market value of the outparcels, discounted to present value, was $828,671. Tr., p. 24.

First Union countered with the appraisal and testimony of its expert, Mack D. Bissette, an appraiser with Schultz, Carr, Bissette & Atwater. Bissette's appraisal was an update of previous appraisals conducted on February 8, 1989 and December 3, 1990 by a former member of his firm. Tr., p. 66. Bissette agreed with Cantrell as to the highest and best use of the respective parcels. Update of Appraisal of Six Vacant Commercial Sites, Respondent's Exhibit 3 ("Bissette Appraisal"), p. 8. However, Bissette used a combination of the market and income approaches. *Id.* He compared the outparcels to properties with similar attributes that have been sold recently and arrived at a "retail value" of $975,000. *Id.* p. 13. He also estimated that it would take approximately three years to sell the outparcels to an end user. *Id.* Bissette discounted the "retail value" of the outparcels by deducting $23,528 for real estate taxes, $58,500 for a 6% broker's fee and $3,000 for general upkeep and arrived at a fair market value of $889,972. Bissette Appraisal, Discounted Cash Flow, Defendant's Exhibit 3.

Bissette and Cantrell used the same method to evaluate the outparcels. In fact, Bissette's fair market value appraisal was approximately $61,000 greater than Cantrell's. However, Bissette then valued the tracts as if sold as a group to a single investor and, therefore, deducted from the fair market value an additional 20% of the purchase price to reflect the profit generated by the investor from buying all the outparcels as a group and selling them individually. Bissette Appraisal, p. 15; Tr., pp. 75–88. Bissette further adjusted his appraisal to arrive at a "fair value" which he defined generally as the amount that would be realized on a forced sale of the property within six months to one year of its receipt.[2] Tr., pp. 94–96. Bissette concluded that the outparcels had a present "fair value" of $610,301. Discounted Cash Flow, Defendant's Exhibit 3.

## DISCUSSION

■ Section 506(a) provides for an evaluation of collateral "... in light of the purpose of the valuation and the proposed disposition or use of such property...." 11 U.S.C. § 506(a). The courts considering this issue have concurred that property should be valued according to the highest and best use of the property that is reasonably available. *In re Peerman*, 109 B.R. 718, 721–22 (Bankr.W.D.Tex.1989); *In re Raylin Dev. Co.*, 110 B.R. 259, 261–62 (Bankr.W.D.Tex.1989). A property's highest and best use is that use which is reasonably available that will result in the highest realized value. As noted by the *Raylin* court: "Unsecured creditors have a right to expect, to count on, and to benefit

---

**2.** Fair value is "... a value which might be reasonably be anticipated from a 6 to 12 month exposure to the market and based on a cash sale transaction with the buyer and seller acting prudently, knowledgeably, and under no necessity to buy or sell. Your appraisal should estimate the cash price that might be received upon exposure to the open market for a reasonable time, considering the property type and local market conditions. When a current sale is unlikely—i.e. when it is unlikely that a sale can be completed within 12 months—the appraisal

must discount all cash flows generated by the property to obtain the estimate of fair value. These cash flows include, but are not limited to, those arising from ownership, development, operation and sale of the property. The discount applied shall reflect the appraiser's judgment of what a prudent, knowledgeable purchaser under no necessity to buy would be willing to pay to purchase the property in a current sale." *In re El Paso Truck Center, Inc.*, 129 B.R. 109, 21 B.C.D. 1432, 1433 (Bankr.W.D.Tex.1991) (quoting 12 C.F.R. § 34 (1990)).

from prudent disposition by under secured creditors of their collateral." *Raylin,* 110 B.R. at 263.

■■■ The court finds that the most appropriate method for valuing the outparcels is fair market value. Fair market value assumes a sale of the property between a willing buyer and seller in which both parties are fully informed, acting *reasonably,* and unaffected by undue stimulus. In this case the highest and best use of the outparcels to First Union is a sale that brings the fair market value of the properties. The court finds the Cantrell appraisal, which employs the fair market value test, to be more probative of the value of the outparcels than Bissette's fair value appraisal. "A 'fair value' is ... by definition a duress valuation." *El Paso,* 129 B.R. at 112, 21 B.C.D. at 1433. "... [It] does little more than magnify the current market's anomalies. Given the importance of accurate valuation to the competing interests of both secured and unsecured creditors (and debtors too, for that matter), adopting such a valuation technique would be irresponsible." *Id.* First Union has not provided the court with any case law which used fair value to appraise real estate. This court, therefore, rejects fair value as a method of valuing estate property.

■■■ The court finds that Bissette's appraisal, based on First Union's intended disposition, has little probative value. Denise Jones, a vice-president with First Union, testified that when First Union receives properties in this manner it is First Union's policy to sell the property as quickly as possible, to a single investor if necessary, despite the fact that a sale under these conditions would most likely bring a lower price than a more thorough marketing effort would. Tr., p. 60–63. Even though the court values property by looking to the secured creditor's options regarding disposition, the creditor is not entitled to a valuation based on a sale of the property under conditions imposed by the creditor that would substantially diminish the amount realized. First Union seeks an evaluation that imposes a wholesaler assumption for purposes of evaluation of the collateral.

This concept or assumption is not consistent with the highest and best use of the outparcels reasonably available to First Union.

First Union can reasonably retain professionals to sell the property to end users. Adjustments have been made to the fair market valuation to allow for the reasonable holding and marketing costs. First Union does not have to sell the outparcels until a reasonable offer for purchase is made. There appears to be no necessity for a forced disposition as suggested by First Union. The court concludes that the highest and best use of the outparcels reasonably available to First Union is a sale to end users.

If the debtor's plan is confirmed, First Union, of course, will have the ultimate choice of the method of disposing of the outparcels. However, First Union elects this method at its own risk and may not elect a lesser use than highest and best, realize less on the disposition and impose on the debtor and its estate an artificially low price or forced diminishment in the value of the collateral.

■■ The court finds that First Union's evidence on the rate of absorption of this type of property to be more persuasive than that presented by the debtor. The outparcels have been on the market for three years. While real estate in the immediate vicinity of the outparcels has witnessed substantial commercial development in recent years, the evidence established that this commercial development is continuing and other similar outparcels will likely be on the market in the near future. Thus, the competition to find and attract purchasers will increase. These additional factors suggest an absorption period of more than two years is likely. Based upon the historical experience of the subject property, the present market conditions and the competition in the market, this court is of the opinion that a three year rate for absorption is more likely for disposition of these outparcels. Cantrell testified, without dispute, that if the outparcels took three years to sell, then his appraisal would be reduced by an additional $50,000.

Tr., p. 46. The court will, therefore, further discount Cantrell's appraisal value by this amount. Based upon the foregoing reasoning, the court concludes that the value of the debtor's outparcels is $778,671.

IT IS SO ORDERED.